We're going to take a short break before our fourth case. All rise. The Honorable Court will take a short recess. All rise. The Honorable Court is now in session. Be seated, please. Our fourth case this morning is number 23-16-36, Palo Alto Networks v. Centripetal Networks. Mr. Radish. Am I pronouncing that right? You are. Thank you, Your Honor. Good morning, and may it please the Court. My name is Andrew Ratch. I represent the appellant, Palo Alto Networks. The 903 patent at issue in this appeal is directed to a network packet correlation process to identify the source of a given network communication. In the patent claims, that source is referred to as the first host. The claims further recite that in response to that packet correlation process, two steps are performed. First, there's a generation of an indication of that first host. So identification of that host, perhaps in a log. Second, there's a transmittal of that identification. Claims don't recite to where. Can you just dig into the issue? In your papers below, before the board, what was your position? And where do you say... I just want you to express to me exactly what the combination was. And I think it was modifying Paxton by using Sutton's notice procedure after Paxton's correlation. But could you talk about that and talk about whether the board recognized that that was the exact proposed combination that you were offering? Yes, Your Honor, that is correct. We relied on Paxton's correlation process, as well as the fact that it logs the results of that correlation, including the source address, as meeting everything in the claims, except for the final limitation of the transmittal. So it's a correlation process. You identify the source of the communication through that process. What Paxton says is this correlation process is useful for network security. It says that it quickly identifies nodes infected with malicious content. And this is at paragraph 30 of Paxton, appendix 2520. It says, and we pointed this out in our briefing, in our petition, it says that an enterprise can, quote, utilize this technique, referring to the packet correlation process, to attribute malicious activity sensed at the edge of a network back to its original source. What Paxton doesn't say expressly is that once you have traced back the source of malicious activity to a source, to tell somebody about it, to tell administrators, so some action can be taken. There would be no purpose in doing the correlation unless you notified somebody about it. That's exactly right. And Paxton says expressly, this process is for network security. So we rely upon Sutton for the very narrow teaching. So where did you discuss this in the petition? So in the petition, we start first with appendix 79, going to appendix 80. This is the overview that we present of Paxton. We're starting at the bottom of appendix 79. We state that matching packets and identifying the true source of packet transmissions is useful for network security, providing a way to... The most important thing is going to be where exactly did you say how you would modify Paxton in lieu of Sutton? Yes. That specific sentence, you know, what is the, you know, are you modifying Paxton so that the notice of Sutton comes after the correlation of Paxton, since it's the correlation that identifies the malicious activity? Yes. Where would that be? I point you to two places, Your Honor. First, in the motivation to combine section at appendix 86, it says to the extent patent, and this is the top of the motivation to combine section there, to the extent patent owner argues that Paxton does not explain in detail what actions are taken with respect to identifying malicious activity. Again, it says that you use the correlation to get back to the source. It doesn't say what to do next. A posita would have been motivated to modify Paxton's computing system to, after the correlating, notify administrators or devices involved with malicious activity as taught by Sutton. That comes after the parenthetical. So that's the motivation to combine. We further explain what that combination looks like on appendix 87. You specifically say here that when the notification is occurring. It's after the correlating, right? After the correlating. And then on the next page, appendix 87, we state thus, when a packet is detected, and so just to back up, Sutton is talking about identifying communications with darknet addresses. The reason Sutton does that is that computers that communicate with darknet addresses may be infected with malware. That's why they're sending communications. We don't rely upon its principal operations, Sutton, the secondary reference, for determining when to issue the notification. Paxton is what we rely upon, the correlating of when, because you trace back to the original source. So we say on appendix 87, thus, when a packet is detected, is communicated to or from a darknet address, i.e., there's malicious activity in your network. Paxton discloses the ability to identify the hosts transmitting or receiving the packets preboundary, so inside of a network. And Sutton teaches making that identification known to administrators or implementing rules to identify or drop future packets to prevent future malicious communications. If you don't notify anybody about the source of a malicious communication in response to the very process that identifies the source, an administrator cannot do anything with that information. There is no network security benefit. We then turn to our claim chart, which is at appendix 104 to 105. This is the response of two-step. As I noted, there are two actions that are responsive to correlating. First is the generation of the indication. For that, we relied upon Paxton, because Paxton discloses generating a log of these correlation results that have the source information. So that's the generation of the indication. Then we explain at the bottom of appendix 105 that, as explained in section 9A4, which is the motivation to combine section, Paxton discloses correlating packets to identify malicious activity and leaves specific usage and remedial steps to the person who incorporated a skill in the art. It doesn't say expressly, go tell administrator. But a posito would have been motivated to transmit the identification of the first host, e.g., to an administrator, as taught by Sutton responsive to the correlation disclosed by Paxton. So that was the ground that we presented. So to find that the responsive to correlating limitation was taught in the prior art, you rely on a combination of Paxton and Sutton just for that. You have to combine them just to meet that full limitation. Is that right? That's correct. I think this is where the board erred in its decision, because it only analyzed the references in isolation. This is apparent at appendix 26 going on to 27. If you really started appendix, going back to appendix 19, from appendix 19 to appendix 24, the final written decision, what the board is doing is recounting the parties' positions and what happened at institution. I think there was a little confusion at institution. There was a dissent at institution, which is somewhat uncommon. But I think what the dissent got confused about was whether we were proposing modifying Sutton by Paxton. As I said, there was no reason to introduce a correlation process into Sutton, which operates on darknet addresses. Well, that was never the combination. Our combination was modifying Paxton by Sutton. I think what has confused me, but hopefully you can clarify it, is I thought you were saying every limitation was disclosed and taught in Paxton other than the last one, the responsive to correlating, and that you were saying that Sutton discloses the responsive to correlating. But that is not your view. Your view is we need both Paxton and Sutton to have a prior teaching of the responsive to correlating. Is that right? It's a combination. You have to analyze the R in combination. We say the responsive to correlating could not be met by Sutton alone, because Sutton doesn't deal with correlation. What we rely upon Sutton for is the simple, narrow teaching that once you have detected the source of malicious activity, you should tell an administrator. Paxton tells you how to identify the source. And when the identifying the source is over, right? Well, Paxton tells you, right. Paxton says, okay, a correlation process in certain networks, the source of a packet information may be lost due to network address translation. That's exactly what the 903 problem was, too. It's the same problem, same solution. So you correlate. It allows you to trace back to where the communication originated from. And then Paxton says, this is really helpful for network security, because you can trace back since malicious activity to its source. All that's left is go tell somebody about that. And all we rely upon Sutton is for transmitted notification once a source has been detected. We sometimes have cases where obviousness might be shown, even if a limitation was not expressly taught or disclosed in the prior art, because it would have somehow been obvious. Is this one of those cases, or is that not your argument here? I submit we could have likely rested on a single reference obviousness. We didn't. You didn't. We didn't. It is, I think, absolutely obvious to everybody in this building that once you identify a source of malicious activity, you ought to notify somebody. But did you make an argument? Do we only have to consider the argument whether Paxton and Sutton together teach the responsive to correlating limitation? Or do we also have to say to ourselves, well, even if they don't disclose responsive to correlating, it still would have been obvious somehow to a person of skill in the arm. I do think KSR mandates that sort of inquiry. But what did you put in the petition? A petition was only a combination of Paxton as modified by Sutton for just the transmittal step. So, again, the responsive to – Is it a combination? Is it it would have been obvious to one of Virginia's filming art to modify Paxton so that Sutton's notice step would occur after correlating? Yes, it's precisely what we said. In fact, you've built the meeting of the limitation by the prior art into your combination. The combination is that the notice occurs after the correlating. That's what the petition says. Yes, the notification – because without the correlating, you don't have the source of the malicious activity. There's just no way to get there. And so the only way you can identify the source is through the correlation. So that correlation gives you the information that you need, which is where did this original communication emanate from? Because that is probably my infected computer may have some malware. So you do that correlation process to uncover. And to be clear, Paxton says it's this technique that attributes malicious activity. It's the correlation technique. I think what's important is understanding what the argument on the other side is about why this is not met. Their entire argument – and this is also how they argue there's substantial evidence supporting the board's decision – is that Paxton correlates everything, does nothing with the correlation results, until sometime later in the day, later in the week, later in the month, some malicious activity is detected, and some network administrator dusts off this log of information and sees what happened sometime in the past. That's not reflected in Paxton at all, and the board did not adopt that interpretation of Paxton. It really didn't adopt or make findings about Paxton in that regard at all. All it did at appendix 20 – this is end of appendix 24 to the top of appendix 25 – is recite what patent owners' arguments were. Now, they try to impute that as a finding to the board, but they never say, we agree with patent donor. They never say, we find those arguments persuasive. They just say, here is what they argue. But it never went on to make findings about Paxton in terms of how it operates. Specifically relying on the petitioner argues that a PSEDA would have been motivated to transmit the indication of the first host, as taught by Sutton, responsive to the correlating. That's our argument. And then also that the argument that must be evaluated is whether Paxton, as modified by Sutton, would have taught the recited transmitting responsive to the correlation, right? That's the argument. Is that last sentence – is that your argument? Yes. Or is that the board recognizing the issue that it needs to resolve? That is the argument that we presented in our petition. That is the argument that we think it needs to resolve. Well, it says right here. It says, therefore, the argument that must be resolved is. Do you think that's the board saying it? Or are they saying that's what you think it is? I guess you've answered that question, but I want to make sure I'm being very clear. Yes, I think that is – I think that's an accurate – I think the board support statement, I think that's accurate. But when the board went to do its analysis at page 26, it didn't actually analyze – sorry, appendix 27. It didn't actually analyze it in combination. It just simply said, in Paxton, there's correlation without any specific identification what to do next, sort of ignoring the creativity of a posita that KSR mandates we take in account. And the combination that you presented. And the combination presented. It says, well, Sutton has this darknet process. Well, sorry, but there's this gap, and you don't reach the claims. You're relying on Paxton for a motivation to notify because it suggests that this is beneficial to network administrators, which is a reason that you would look to Sutton for the notification. Absolutely. Expressly says it's beneficial to network security. Our motivation to combine Expressly said this would benefit network security. That motivation is the express purpose of our primary reference, and that's why somebody would notify an administrator. They wouldn't just keep this information impounded somewhere. They would notify someone. Do you think the board reached the issue of motivation to combine, or did it stop before that? I don't see it in your addressing the motivation. I see it just saying, we have one arc teaches A, this other arc teaches B, and we're not going further. And I think that's error. I think it has to analyze it in combination. Had it done so, I think it would have recognized there has to be a motivation here. Our motivation, network security, is the express purpose of Paxton. And if I could just reserve my remaining ten seconds for it. We'll give you two minutes. Okay, Mr. Lerman. Thank you, Your Honor. Your Honor, may it please the court, Dan Lerman for Centripetal Networks. The board applied the correct legal test for obviousness, and its findings were supported by substantial evidence. Where in the board's opinion does it say what it thinks to combine the references? Like, you know, that combination as proposed by the petitioner, where it is Paxton modified by Sutton, so that Sutton's notification occurs after Paxton's correlation. Okay, so first, Jocelyn, you're correct, and I think my friend conceded that the board articulated the correct question, which is whether Paxton, as modified by Sutton, would have taught the recited claim. So that's on page 24. I think the board's analysis is on page 26 to 27. And what the board said was, first, Paxton does not disclose any action responsive to correlating, and they don't argue that it discloses any action responsive to correlating. So that leaves a gap. Then on page 27, sorry, of the appendix, it says Sutton does not fill in that gap. And so what it says is this leaves us with a correlation with no subsequent actions, and we have a transmission with no correlation. And then importantly, it says a person of skill in the art would not have appreciated making the transmission from one reference responsive to the correlation in the other reference. I don't understand what that means. I mean, this seems to be pretty simple. You find a correlation, and it would be beneficial in Paxton itself to notify the administrator, and then this other reference, Sutton teaches you to notify the administrator. Yes, Your Honor. Why is there not a motivation to combine those? I was just addressing the question whether the board in fact applied a combination analysis, and as a matter of law, it did. I think Your Honor is now getting… It sounds like you're saying there's no motivation to combine. No, Your Honor. We're not disputing. The board did combine. That's my assertion. The board did combine Paxton and Sutton. What it says is even if you combine them, you don't get to the claimed invention. But there's a proposed combination. Doesn't the board have to look at that combination proposed? The proposed combination wasn't just let's throw Sutton together with Paxton or throw Paxton with Sutton. It was a very specific combination, and it was whether one of Ordinary's filming art would have been motivated to modify Paxton so that Sutton's transmittal of notice occurred after Paxton's correlation. That was the precise motivation for a proposed combination. It wasn't just let's throw these together. That's not how it works, for obviousness. Well, yes. Well, KSR makes clear that it's not sufficient, Your Honor, to just find elements of the invention of the prior. You need to show that it wouldn't be combined in the way the invention does. And this gets to Judge Blake's question. You said that the board found that it had been combined. The board said it combined. The board did combine the prior art. Yes, Your Honor, but this is what's missing. The claim is a transmission responsive to correlating. Even if you add a notification onto Paxton, it is not responsive to the correlating, and this gets to the substantial evidence claim that we were just talking about. The prior art system, and this is amply supported by the record, in Paxton, correlates every reference and then sits on that log, and then a week, a month, a year later detects – Well, that's not – the board didn't say that, and I'm not sure whether that's true or not. The board did say that, and it's undisputed for purposes of this appeal. Where does the board say that that's true? On page 26 of the appendix, the board said that our expert statement supports our argument, and that statement is that Paxton does not disclose doing anything with the matching information until malicious activity is sensed. Pan agrees. Where are you on 26? 26, 25 to 26, the carryover paragraph. This assertion is supported by Pat and orders to Clarent, who finds that Paxton does not disclose or suggest doing anything with the packet information unless or until malicious activity is sensed. It therefore does not disclose anything responsive to or in reaction to generating this match log. Yeah, but that doesn't – it's not inconsistent with the notion that the correlation happens after the malicious activity is sensed. It is, again, Your Honor. It's not whether it happens after. It's whether it's in response to, and they agree at page 42 of their brief. But that's contrary to what you were saying a moment ago. So you agree that what Paxton discloses is detecting malicious activity, then doing the correlating? I don't think Paxton speaks to this at all, and this is important to understand the argument. The board found that they did not argue that Paxton made any actions responsive to correlating. None of this is in there, and that's what the board found. You're really confusing me. We're dealing with a simple question, and we'll deal with the significance of the answer to that question in a moment. The board appears to view Paxton as disclosing, detecting malicious activity, and then doing correlating to identify the source, right? The board said that – Yes or no? That's not addressing my question. I'm sorry. Then what is your question, Your Honor? My question is the board appears to agree that what Paxton discloses is detecting malicious activity and then doing a correlating step to figure out the source of it, right? No. What the board found was only it has the correlating. I think there is evidence in the record to support the notion that Paxton, if it discloses anything at all with respect to the order of operations, it would be after sensing malicious activity, and that's why it's not responsive because you're already waiting. So we can just assume for purposes of our discussion that what Paxton discloses is malicious activity, then you do a correlating step, okay? Isn't it that instead Paxton suggests identifying the true source of the packet through correlating, and it's identifying the true source of the packet that helps you identify whether something's infected with malicious content? No, Your Honor. It assumes there's an infection with malicious content. In response to that malicious content, it says, we've got to figure out the nature and scope of this and where it came from, so we're going to go back and consult our log, the matching log that we did a year ago, and help identify the source. Our view is that that is profoundly different than the packet. Let's assume that that is, but why isn't that disclosing a step, that is the identification of malicious, of the source of the malicious activity, is doing a notification in response to that ascertainment? Because it's response to the malicious activity. I mean, this is, they're not making a, they're not disputing clean construction. It's a response to the correlation in the sense that it's the correlation has discovered the source, so in response to having identified the source through the correlating step, you do a notification. Well, no, because that wouldn't mean anything unless they already found the malicious activity. They're either responding to every single correlation without any reason, or they're only responding after they sense malicious activity. Could I just, if I could just explain, our patent, our patent, the correlation itself provides an indication that there's a communication from a malicious host. And immediately... You're just not dealing with my question. My question is, they discover malicious activity, they use a correlating step to determine the source of that, and then the idea is, okay, in response to making that determination, we'll notify the systems administrator as shown in Sutton. That is their argument, Your Honor. I don't think that's... What's wrong with it? Well, A, I don't, what they argued below, and what the board found was Sutton doesn't disclose making any actions after the correlating. So we're already assuming that we're changing the prior art to read on correlation. Making actions after the correlating, that's why you're looking to Sutton. Okay, so now we have the notification. What's wrong is they concede in their brief and below that merely taking an action after another action is not responsive to. The key invention here is the responsive to correlating claim. In their chart, when they're matching up these... You're saying you notify the systems administrator because you've used the correlating step to identify the source. But you've used it after you've been infected with malicious activity. The whole point of our patent is proactive and not reactive. The whole point of our patent is at the threshold. You can recognize that a communication is coming from a malicious actor and you respond before it comes in. If you look at their reply brief, they agree with their statement. The impacts and the matching info is stored and, quote, no further action is taken in response to the matching. They agree at page three of their reply with their statement that in our patent it detects malicious activity from a malicious host before it could harm the network. That is a profoundly different system. I still don't know where. I understand. I hear what you're saying. Thank you. My question is, where do I see... I think it's possible the board didn't find... found... was trying to say there's no motivation to combine as proposed by the petitioner. But you have a different position on that. You think that the board combined the art. But I have a question for you, which is, where do you see that they say the reason why they would have combined or where is there... where is it that the board says it would have been obvious to combine these two references? Where it said it wouldn't have been obvious. That it was not obvious. You're right. Not obvious. Or that it would be. Just so they were combined. I want to know... Yeah, just to clarify, I believe the board did combine the references, so we're not looking for... but what I found lacking is a motivation to combine in this particular way, which is to alter the prior art so that it's responsive to the correlating. Where it's found is, I think you need to read it as a whole. What it said is, Paxson does not disclose anything. It says there's a gap. And then it says what we're left with is a correlation in one and a transmission in the other, but without any bridge showing that one of the skill in the art would have appreciated that the transmission would be responsive to the correlation. So it's saying we have point A and we have point B, but what we're missing is C, the responsive. A person's skill in the art wouldn't have combined it in a way to make the transmission responsive to the correlation. You're using odd language to do this. Instead of just saying, we think a person of ordinary skill in the art wouldn't have been motivated to make this particular combination because. Right, but I think the language says there's a gap. I'm really confused on how you're reading the board. Are you saying that the board found a lack of motivation to combine, or are you not saying that? I'm not saying there was a lack of motivation to look at Paxson as modified by Sutton. I'm saying the board found that even if you did that, you would not have combined the references in this way. They found that they failed to prove obviousness, correct? Correct. On what basis did the board conclude? What did they say they failed to do? They failed to show that a person's skill in the art would have combined reference A with reference B to make a transmission responsive to the correlation. So they failed to find a motivation to combine. In that way. And the only place we can see that the board found a lack of motivation to combine is this one sentence about the bridge that you keep harping on. Well, not just the bridge. It also says, to establish by preponderance of the evidence that claim one would have been obvious over the teachings of Paxson, Sutton, and Nybergen. That doesn't say anything about motivation. Well, wait, but it's a combination. This is an APA review for APA. We need to be seeing real understanding. Again, we're not disputing that the board looked to Paxson in light of Sutton. We're saying it found that that didn't reach the claimed invention. I'm sorry. So, didn't reach. We're just going to have to make this simpler for me to have any hope for me here. You've said there was a lack, there was a finding of a lack of motivation to combine. Are you standing by that? No, what I'm saying is there was a lack of evidence that a person of skill in the art would have taken the notification and made it responsive to the communication because that's not in the combination. Let me start over then. Did the board find that neither Paxton nor Sutton disclosed the responsive to correlating limitation?  So, yes, the board found that that limitation was not taught in either Paxton or Sutton. That's your view, right? Yes. Did the board also consider whether the combination of Paxton and Sutton together disclosed the responsive to correlating limitation as is outlined at pages A-104 and 105 of the petition?  Where did the board consider that? In this same page, and you have to read it as a whole, the board said the question is whether Paxton as modified by Sutton. It says, here's what Paxton shows. It leaves a gap. Now I'm looking to see whether Sutton fills that gap. It doesn't. And a person of skill in the art wouldn't fill that gap either. That is a combination analysis. And this is maybe we're getting hung up with the motivation to combine. But the board clearly said that neither reference has responsive to correlating. And then it said, even when you look at the two of them together, you still don't have a transmission that's responsive to correlating because that's the key claim language that you can't cut up like baloney. You find the source by correlating and then in response to that discovery you notify an administrator. That's the argument. Where does the board deal with that? Well, the board deals with that on page 26 where it says they didn't articulate any argument that a person of skill, that it would be, quote, facetious to perform the correlating without a notification. So that argument was waived. The argument that Your Honor opened with, which is what's the purpose of this correlating if you don't do a notification, they didn't make that argument. They don't dispute that they didn't make that argument. They did. They relied on paragraph 30 of Paxton. Which is on page 2565, I think. Maybe I got the wrong page number. 2520, Your Honor. Paxton begins at 2556, right? They rely on paragraph 30 of Paxton as saying by the correlating step we can identify the source. And then it's... It's at page 2520. 2520. That is useful to the system's administrator. That's right. And the board found, first of all, that they did not argue that Paxton itself... They said Paxton left everything to a person of skill in the art and it didn't disclose anything. But even to the extent we're looking at paragraph 30, if you look, it says networks that have significant investments into the backbone can attribute malicious activity sensed on the network back to its original source. This whole paragraph 30, to the extent that a person of skill in the art is going to look at it, it's all geared. It assumes malicious activity is already on the network. That's what our expert said. It said it's not going to look at the correlate. Our expert said, and this is in the record, a person of skill in the art reading paragraph 30 would not understand that to suggest taking any action after the matching log unless or until malicious activity is detected. If there's no malicious activity detected when you're routinely sweeping the network, and this takes a lot of time, a lot of energy, a lot of resources, then you need to go back to a log that could be millions of bits long and compare it to it, and this is all after the fact. Our patent is proactive. It doesn't require detecting malicious activity on the network. It uses a correlation itself to identify a communication from a malicious host. And because of that, the transmission is responsive to that correlating. It's not responsive to malicious activity. In their patent, by their own hypothesis, it's responding to an infection on your network. That is too late, and that's the core invention here. Can I just add two narrow questions just to make sure I understand your reading of the board? You've told me you think the board found a failure to show motivation to combine. I think your answers earlier also indicate you think the board found that even if you did combine Paxson and Sutton, you would not get the responsive to the correlating limitation. A hundred percent. That's the core limitation, responsive to correlating. That even the combination of Paxson and Sutton do not teach or render obvious the responsive to correlating. That's correct. Do you see that in the board's decision? I see that in the board's decision, but importantly, I see that in the bridge. That's all I needed on that. Second narrow question, so bridge, you keep skipping over the word bridge in the sentence that you say is key here. What does the board mean to you when it's saying there's not a bridge? I thought I read that line. The bridge, Your Honor, is just the gap between the prior art and the claimed invention. That's all it's saying is that the question is whether, when you combine, whether it's going to reach it. It doesn't because it doesn't have this key claim, this key aspect of the claim, which is responsive to the correlating. It's another way of saying there's a gap. It's just another way of saying there's a gap. It doesn't reach the invention, and a person's skill in the art wouldn't have modified it to reach the invention. That's all the bridge is. It's a bridge between the prior art and the claimed invention, and that's what's lacking, and that means that the combination itself, to Your Honor's original point, doesn't reach the claimed invention, even if you combine it the way that they say they do. Okay. Thank you, Mr. Lerner. Mr. Resch. Thank you, Your Honor. Just to start with your last question, Judge Stark, about the bridge language, I think that Centripetal's argument about how that's understood reinforces the notion that these references were not analyzed in combination. What the board says is we have a correlation from Paxton with no specific steps, and separately, we have this teaching from Sutton that's unrelated to or any correlation, and from those separate teachings, there's no bridge to the claims. That's not an analysis of the art in the combination proposed. Second, I just don't understand how, when you combine the art, you don't reach the claims. You have a packet correlation process. The technique is especially stated by Paxton in paragraph 30, appendix 2520. The technique, the matching technique, attributes malicious activity sensed at the edge of a network back to its original source. You get to the source. What do you do? You tell somebody. It's about as simple as an obviousness case can get. Once you combine a no notification process with the correlation that gets you the information that needs to go to an administrator, then that notification has to be responsive to correlation. The correlation is the only thing that provides the source information. Without the correlation information, you have no source. Last point about this order of steps argument. They say that you would correlate and look at that a year later. That doesn't make any sense in the context of this invention. It's of Paxton, which is about quickly identifying nodes infected with malicious content. That's right from Paxton 30. It allows the network administrator to better identify the slope of a malicious incident so it can take some remedial action. Doing that a year later doesn't make any sense, but in any event, the board did not make any findings that Paxton correlates everything first, does nothing for a year, and consults it only later. That's just an argument they've raised in support of the board's findings, but it was not a finding made by the board. For that reason, we think that this decision needs to be reversed and remanded. Thank you. I thank both counsel. The case is submitted. That concludes our session for this morning.